**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | : : : | Case No.: 21 MC 102 (AKH) (all actions identified in the table attached hereto) |
| | : | |
| THIS DOCUMENT APPLIES TO ALL LOWER MANHATTAN DISASTER SITE LITIGATION | : : : | |

---

**MEMORANDUM OF LAW OF DEFENDANTS DEUTSCHE BANK TRUST CORPORATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND DB PRIVATE CLIENTS CORPORATION IN OPPOSITION TO MOTION TO TRANSFER AND/OR STAY OF DEFENDANTS TULLY CONSTRUCTION CO. INC. AND TULLY INDUSTRIES, INC.**

---

DAY PITNEY LLP
7 Times Square
New York, New York  10036-7311
(212) 297 5800

Attorneys for Defendants
Deutsche Bank Trust Corporation
Deutsche Bank Trust Company Americas and
DB Private Clients Corporation

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................................1

PRELIMINARY STATEMENT .........................................................................................2

PROCEDURAL HISTORY AND STATEMENT OF FACTS ..........................................4

ARGUMENT .......................................................................................................................7

      I.      THE NATURE OF A PLAINTIFF'S WORK, NOT THE LOCATION OF THE WORK, SHOULD BE THE DETERMINING FACTOR IN DECIDING THE DOCKET TO WHICH A PLAINTIFF'S CASE IS DESIGNATED...........................................................................................7

      II.     THE RECORD FAILS TO DEMONSTRATE THAT ANY OF THE MOTION CASES BELONG IN THE 21 MC 100 DOCKET.........................................................................................................8

            A.     Ninety-Eight Plaintiffs Did Not Work For Tully......................................9

            B.     No Plaintiffs Fit Within Tully's Defined Scope of Work as a City Contractor..........................................................................9

            C.     Over 75% of Plaintiffs Identify Themselves as "Cleaners" or "Handlers". ....................................................................11

      III.    TULLY'S APPARENT PREFERENCE TO HAVE ALL OF ITS CASES RESIDE IN ONE DOCKET SHOULD NOT PREVAIL OVER THE RIGHTS OF OTHER PARTIES...........................................................................................12

CONCLUSION ..................................................................................................................12

## PRELIMINARY STATEMENT

Deutsche Bank Trust Company Americas, individually and formerly known as Bankers Trust Company, and also incorrectly pleaded as Deutsche Bank Trust Company; DB Private Clients Corp., formerly known as BT Private Clients Corp.; and Deutsche Bank Trust Corporation, individually, and formerly known as Bankers Trust Corporation and Bankers Trust New York Corporation (collectively, the "Deutsche Bank Defendants") submit this memorandum of law in opposition to the Motion To Transfer[1] of defendants Tully Construction Co., Inc. and Tully Industries, Inc. (collectively "Tully"). Tully's motion seeks the transfer of 100 cases from Consolidated Master Docket Number 21 MC 102 docket ("21 MC 102") to Consolidated Master Docket Number 21 MC 100 ("21 MC 100"). However, Tully's arguments in support of the requested transfers misconstrue this Court's prior orders in this litigation and are not borne out by the current record of this case.

Tully's primary argument is that all of the cases it seeks to transfer (the "Motion Cases") involve the former Deutsche Bank Building at 130 Liberty Street, which is defined as part of the "World Trade Center Site" under Case Management Order No. 3 in 21 MC 100 ("CMO 3"). (Certification of Marc D. Crowley, dated August 15, 2007 ("Crowley Cert."), Ex. A). Therefore, according to Tully, these cases should be administratively designated to 21 MC 100. However, this Court has made it abundantly clear that the "World Trade Center Site" definition, which was adopted during the early stages of this litigation, was not to be used for any purpose other than construing the provisions of CMO 3, and should not be read in a manner that would affect any of the parties' substantive rights.

---

[1] The Deutsche Bank Defendants do not oppose Tully's motion to the extent that it seeks a stay of claims against Tully which remain in the 21 MC 102 docket.

Tully asserts that the claims against it in the Motion Cases could only have arisen from work that Tully performed as a City contractor, and on that basis argues that 21 MC 100 is the appropriate docket. For this argument, Tully relies on this Court's treatment of the Steven Zablocki case, Civil Action No. 06-cv-15494. This Court previously ordered that Mr. Zablocki's action properly belongs in 21 MC 100 because it involves claims by a plaintiff who, although he worked in the Deutsche Bank Building, was in fact bringing a claim against Tully arising from Tully's work as a City contractor. This argument does not apply to the Motion Cases:

- 98 out of the 100 plaintiffs in the Motion Cases do <u>not</u> allege that they worked either for Tully or one of Tully's identified subcontractors (see Crowley Cert., Ex. B, at lines 14 and 99, at column D);

- 97 out of the 100 plaintiffs in the Motion Cases allege work at the Deutsche Bank Building outside of the scope of Tully's work as defined by Tully (see *Id.,* at lines 3, 34 and 54, at column H);

- None of the three plaintiffs in the Motion Cases that fit within the scope of work as defined by Tully actually allege work for Tully or its subcontractors; (see *Id.*, at lines 3, 34 and 54, at column D;

- Two of the three plaintiffs in the Motion Cases that fit within the scope of work as defined by Tully also allege work at other buildings outside of Tully's defined scope (see *Id.*, at lines 3, 34 and 54, at column E); and

- Over three-quarters of the plaintiffs in the Motion Cases allege that they worked as "handlers" or "cleaners" – jobs that are entirely different from Mr. Zablocki's work as a "steel cutter" (see *Id.,* at ¶11; Ex. B, at column F).

Tully has overlooked the fact that over 60% of the Motion Cases also involve locations outside of the CMO 3 definition of the World Trade Center Site. (See Crowley Cert., Ex. B, at column G). This motion has implications beyond Tully's preference to have its cases consolidated into one docket – the docket designation for these cases affects many other

defendants.[2]  Based upon the current record, the Motion Cases belong in the 21 MC 102 docket, and Tully's motion should be denied.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On February 7, 2005, this Court entered CMO 3, which defined the "World Trade Center Site" to include, among other locations, the Deutsche Bank Building at Liberty and Greenwich Streets.  As stated in CMO 3, this definition was provided "for the sole purpose of construing the provisions of CMO No. 3 and may not be utilized or cited by the parties for any other purpose."

On August 9, 2005, this Court entered an unnumbered Case Management Order in 21 MC 100, which directed that "[c]ases brought by plaintiffs – such as clean-up personnel – alleging personal injury primarily based on circumstances and conduct in the period after the September 11, 2002 attacks, and based on conduct that occurred outside the [CMO 3 "World Trade Center Site" definition] would be designated under 21 MC 102.  (Crowley Cert., Ex. C, at ¶3).  That order further directed that the 21 MC 102 cases would be coordinated in a separate docket (at least in part) because of "plaintiff's desire to have issues of fact and law unique to these cases supervised on a separate basis."  (*Id.*).

On March 28, 2007, this Court entered Case Management Order No. 1 in Master Docket No. 21 MC 103 ("21 MC 103").  (Crowley Cert., Ex. D).  By that Order docket 21 MC 103 was established for plaintiffs claiming injury as a result of work performed both at the World Trade Center Site (as defined in CMO 3) and at other sites.  (*Id.*).

On March 21, 2007, this Court entered Case Management Order No. 3 in 21 MC 102.  (Crowley Cert., Ex. E).  That Order required that each plaintiff file individual check off

---

[2] At page 4, footnote 6 of its brief, Tully claims that its substantive rights may be impacted by designation of the Transfer Cases to the 21 MC 102 docket.  Tully fails to acknowledge that many other defendants' substantive rights may be impacted by its recommended docket designation.

- 4-

complaints detailing "specific locations worked." (*Id.*, at ¶4). The deadline for filing such complaints was June 1, 2007. (*Id.* at ¶5). Check-Off complaints, including those which are the subject of Tully's current motion, have since been filed and served. Most of these Check-Off complaints contain abbreviated work histories for each plaintiff, identifying job titles, names of employers, and locations worked. (See Crowley Cert., Ex. B).

On or about March 29, 2007, plaintiff Steven Zablocki requested that this Court transfer his case from the 21 MC 100 docket, which is subject to a stay by the United States Court of Appeals for the Second Circuit, to the 21 MC 102 docket, which is not stayed. This Court denied Mr. Zablocki's motion to transfer because: (a) Mr. Zablocki's complaint alleged that he worked at the Deutsche Bank Building, a building which fell within the CMO 3 "World Trade Center Site" definition; and (b) Mr. Zablocki alleged that he worked for Tully Construction Company, Inc., one of the contractors that joined the City of New York's interlocutory appeal. However, Tully fails to note that defense counsel in the Zablocki matter did not receive notice of plaintiff's request and therefore did not have the opportunity to present their respective positions concerning Mr. Zablocki's request before the Court's ruling. Mr. Zablocki alleged that he worked only for Tully,[3] whereas 98 of the 100 plaintiffs in the Motion Cases allege that they did no work for Tully (or a Tully subcontractor). (See Crowley Cert., Ex. B, at columns D and E). Mr. Zablocki alleged that he worked only at the Deutsche Bank Building, whereas 61 of the plaintiffs in the Motion Cases allege additional work at buildings outside of the CMO 3 definition of the "World Trade Center Site." (See *Id.,* at column G).

As this litigation has progressed, questions have arisen as to the purpose and impact of the CMO 3 "World Trade Center Site" definition, and this Court has reemphasized its position

---

[3] Zablocki alleged that he worked for Manfort Brothers, Inc., which was a Tully subcontractor.

that substantive rights should not be impacted by how the cases are categorized through their designation to the various dockets. (Crowley Cert., Ex. F, at 21:3-7). This Court has also explained that the CMO 3 "World Trade Center Site" definition was a technical one, and the "only definition that was at hand" at the time of the original order. (*Id.,* at 15:16 and 16:11-12). This Court has determined that cases designated to the 21 MC 100 docket should involve claims focused mainly against the City and its contractors because the City's Department of Design and Construction ("DDC") had taken the lead in the work at the World Trade Center. (*Id.,* at 15:17-20). Cases designated to the 21 MC 102 docket should involve private entities other than the City, the DDC, or their contractors. (*Id.*, at 15:21-23).

The issue which is the subject of this motion surfaced more recently in the parties' joint submission to this Court dated August 1, 2007. (Crowley Cert., Ex. G). This joint submission is awaiting the court's consideration and concerns Tully's request to transfer the Kirk Arsenault case (Civil Action No. 04-cv-5338) from 21 MC 102 to 21 MC 100. (*Id.*). The Deutsche Bank Defendants joined Tully's application for transfer because the work performed by plaintiff Arsenault, like that of plaintiff Zablocki, was construction work for a City contractor. (*Id.*, p. 2, fn. 2). However, the Deutsche Bank Defendants did not concede and do not agree that the CMO 3 World Trade Center Site definition was dispositive of the Arsenault transfer application because, "it is the nature of a given plaintiff's work, not just the location, that should dictate whether the case is designated to 21 MC 100 or 21 MC 102." (*Id.*).

**ARGUMENT**

I.    **THE NATURE OF A PLAINTIFF'S WORK, NOT THE LOCATION OF THE WORK, SHOULD BE THE DETERMINING FACTOR IN DECIDING THE DOCKET TO WHICH A PLAINTIFF'S CASE IS DESIGNATED**

Tully argues for a mechanical approach to designating cases within specific dockets, an appraisal which would turn only upon whether or not a complaint includes a location that falls within the World Trade Center Site definition found within CMO 3[4]. However, CMO 3 makes clear that this definition is not to be used or cited by the parties for any purpose other than construing that particular order.  (See Crowley Cert., Ex. A).  This Court has also subsequently stated that its rationale for designating cases to certain dockets is not purely geographic.  As this litigation has evolved, it has become apparent that the nature of a plaintiff's work, not simply the geographic location of such work, should be the determining factor in whether his or her case is designated to 21 MC 100, 21 MC 102, or 21 MC 103.

Although this Court has not ruled as such, the Court's statements at the June 15, 2007 Case Management Conference indicate that the reason for designating certain cases to 21 MC 100 was that those cases involved DDC work, and that, at the time CMO 3 was entered, the "World Trade Center Site" definition was simply a technical (and the best available) definition to segregate those cases.  (Crowley Cert., Ex. E, at 15:16, 16:11-12, and 15:17-23).  This Court's ruling in the Zablocki matter (which simply maintained the existing docket designation for that case) is also consistent with that reasoning.

---

[4] If this Court were to mechanically approach case designation solely based upon geography, over 60% of the subject cases would more properly be designated to the 21 MC 103 docket, because they implicate locations both within and without the World Trade Center Site definition established in CMO 3.  (See Crowley Cert., Ex. B, at column G).

The Deutsche Bank Defendants have also maintained a consistent position in this regard. They joined in Tully's pending request to transfer the matter of plaintiff Kirk Arsenault (Civil Action No. 04-cv-5338) from the 21 MC 102 docket to the 21 MC 100 docket.  Like Mr. Zablocki, Mr. Arsenault alleged that he worked only for a Tully subcontractor, in the Deutsche Bank Building, and at the apparent direction of the DDC.  However, by that joinder, the Deutsche Bank Defendants did not agree to the redesignation of the Motion Cases to the 21 MC 100 docket because, as explained in Point II below, the record does not support Tully's premise, i.e., that the plaintiffs in the Motion Cases performed DDC work at the Deutsche Bank Building.

## II. THE RECORD FAILS TO DEMONSTRATE THAT ANY OF THE MOTION CASES BELONG IN THE 21 MC 100 DOCKET

Tully states that each of the Motion Cases involves claims against Tully arising from its work as a City contractor, and, as such, should be designated to the 21 MC 100 docket.  Tully then argues that each of these cases is analogous to the Zablocki matter and that the Court should designate the Motion Cases to the 21 MC 100 docket, as it did the Zablocki case.  The information from Mr. Zablocki's complaint relevant to this comparison is that:  (1) "Tully was acting in the capacity of the general contractor and/or construction manager" and "Tully retained Plaintiff's employer, Manfort Brothers;" (2) Mr. Zablocki did not do any work for any company other than Tully or a Tully subcontractor; and (3) all of his work was done at the Deutsche Bank Building.  However, only two of the 100 Motion Cases fit the Zablocki criteria (but should not be transferred for other reasons explained below):  Manuel Caguana (#14)[5] and Ancil Watson (#98).  (See Crowley Cert., Ex. B).  The other 98 cases are factually distinguishable in ways that

---

[5] For the purposes of this opposition, all references to plaintiff by number refer to the numbering provided by Tully in the list of cases.  The same numbering is used in the summary chart attached as Exhibit B to the Crowley Certification.

make Tully's analogy to Zablocki inapplicable, making transfer to the 21 MC 100 docket inappropriate. (*Id.*).

A.      Ninety-Eight Plaintiffs Did Not Work For Tully

Of the 100 Motion Cases, only two of the plaintiffs, Mr. Caguana (#14) and Mr. Watson (#98), allege that they performed <u>any</u> work for either Tully or any of the Tully subcontractors identified in Exhibit A to the Certification of Joseph E. Hopkins, dated August 2, 2007, submitted in support of Tully's Motion ("Hopkins Cert.").[6]   (See Crowley Cert., Ex. B, at column D).   The other 98 plaintiffs allege work for a variety of other non-Tully employers including:  LVI Environmental Services, Inc., ETS Contracting, Comprehensive Environmental, PAL Environmental Safety, Kiss Construction, Inc., Pinnacle Environmental Corp., Trade Winds Environmental Restoration, Branch, Trio Asbestos, CES, Galt John Corp., Asbestos Lead and Hazardous Materials Laborers, Safeway Construction, Inc., Safeway Environmental Corp., Fire Department of New York, Local 78, LBI-ABAS CES, PAR Environmental Corp., Nastasi Eurotech, Volunteer, Site Safety, LLC, and Maxon's Restoration, Inc.  (*Id.*).  Since none of these 98 plaintiffs allege work for Tully, Tully's arguments in support of the transfer do not apply and the motion should be denied with respect to plaintiffs #1 to 13, 15 to 97, 99, and100.

B.      No Plaintiffs Fit Within Tully's Defined Scope of Work as City Contractor

Tully's central argument is that all of the claims against Tully in the Motion Cases could only relate to its work as a City contractor, which would result in all of its cases being properly designated in 21 MC 100.  Exhibit A to the Hopkins Certification defines the work done by Tully

---

[6] Prior to Tully's filing of this motion, counsel for the Deutsche Bank Defendants asked Tully's counsel for a list of Tully's subcontractors to evaluate Tully's transfer request.  However, as of the date of this opposition, Tully had not provided this information.   The Deutsche Bank Defendants have therefore relied upon Tully's "Detailed Chronological Declarations," attached as Exhibit A to the Hopkins Certification, as a means to identify Tully's contractors and the work performed by Tully at and around the "World Trade Center Site."

and its subcontractors in two phases: "Phase I," which included 2 WTC, 4 WTC and 5 WTC from September 11, 2001 to January 7, 2002, and "Phase II," which included work at the entire WTC Site (as defined in CMO 3) from January 8, 2002 to July 1, 2002 with respect to utility restoration.  (Phases I and II are referred to collectively as the "City Work").[7]  In order for Tully's argument to prevail, the plaintiffs in the Motion Cases would have to allege that all of their work fell solely within the definition of the City Work.[8]  However, Tully's arguments fail in this regard because none of the plaintiffs in the Motion Cases allege work history solely within the scope of the City Work.  (See Crowley Cert., Ex. B).

Only three of the 100 plaintiffs in the Motion Cases, Gladys Agueldo (#3), Norbeto Gallardo (#34), and Ines Leon (#54), allege a work history that falls entirely within Phase II of the City Work.  (*Id.*).  However, Ms. Agudelo (#3) alleges that she worked for Comprehensive Environmental at the Deutsche Bank Building and Ms. Leon (#54) alleges that she worked for PAR Environmental Corp. and Pinnacle Environmental Corp. at the Deutsche Bank Building.  (*Id.*).  None of these are Tully subcontractors identified in the Hopkins Certification.  Further, while Ms. Agueldo's (#3) and Ms. Leon's (#54) work histories include work within the definition of the City Work, their complaints also allege work in buildings other than those identified by Tully:  1 Federal Plaza, 100 Church Street, 70 Pine Street, 75 Park Place, High School of Economics and Finance, 90 Trinity Place, the Post Office, and P.S. 234 Independence School.  (See Crowley Cert., Ex. B, column G).  The third plaintiff, Mr. Gallardo (#34), does not list other work sites.  (*Id.*).  His claim would appear to fit within the definition of City Work, but

---

[7] We do not adopt or ratify Tully's definition of its scope of work, but use the definition Tully provided solely for the purpose of responding to this motion.

[8] The 21 MC 103 docket is designated for plaintiffs alleging work both within the defined WTC site and at other locations.

his complaint alleges that he worked for Pinnacle Environmental Corp., not Tully or a Tully subcontractor. (*Id.*, at column E). Accordingly, none of these three cases should be transferred to 21 MC 100.

The other 97 plaintiffs have alleged work histories that either predate Tully's definition of City Work, post-date it by as much as four years, or both. Even the two plaintiffs alleging work performed for Tully and its subcontractor EROC, Mr. Caguana (#14) and Mr. Watson (#98), allege work at the Deutsche Bank Building outside of the time frame presented by Tully for its City Work. Therefore, Tully's motion to transfer should be denied with respect to all 100 of the Motion Cases.

> C.      Over 75% of the Plaintiffs Identify Themselves as "Cleaners" or "Handlers"

Lastly, the plaintiffs in the Motion Cases do not identify jobs that appear to be directed by the City of New York under the auspices of the DDC. (See Crowley Cert., Ex. B, at column F). The complaints in the Motion Cases allege a variety of work, including: asbestos handler, handler, cleaner, office cleaner, supervisor, firefighter,[9] volunteer, and safety manager. (*Id.*). In fact, over three quarters of these plaintiffs allege work as asbestos cleaners or handlers, a jobs which is readily distinguishable from the nature of the work that was performed by the other plaintiffs in 21 MC 100. Therefore, Tully's motion should be denied.

---

[9] It is unclear at this time whether plaintiff Samuel T. Giamo (#43), who alleged that he was a "Firefighter", should be designated in the 21 MC 100 docket. However, the arguments advanced by Tully do not apply to him since he is not an employee of Tully or its subcontractors.

### III.    TULLY'S APPARENT PREFERENCE TO HAVE ALL OF ITS CASES IN ONE DOCKET SHOULD NOT PREVAIL OVER THE RIGHTS OF OTHER PARTIES.

Tully's motion impacts cases involving many other work locations (and defendants) which fall outside of the CMO 3 "World Trade Center Site" definition.  (See Crowley Cert., Ex. B, at column G).  Although Tully argues that the cases it seeks to transfer are substantially similar to those residing in the 21 MC 100 docket, it offers nothing to distinguish these cases from those residing in the 21 MC 102 docket (other than the fact that they have named Tully as a defendant).  Whatever reasons Tully may have for wanting the Motion Cases transferred to 21 MC 100, its arguments are not driven by the substantive allegations of the cases at issue.  Tully's motion should be denied.

### CONCLUSION

For the foregoing reasons, the Deutsche Bank Defendants respectfully request that this Court deny Tully's motion to transfer in all respects.

Respectfully submitted,

 /s *Benjamin E. Haglund*
Benjamin E. Haglund, Esq.
DAY PITNEY LLP
Attorneys for Defendants
Deutsche Bank Trust Corporation
Deutsche Bank Trust Company Americas and
DB Private Clients Corporation

Dated: August 16, 2007

21 MC 102

In Re World Trade Center Lower Manhattan Disaster Site Litigation

| Plaintiff | Case Number |
|---|---|
| Byron Acosta | 07cv1552 |
| Luis Adriano | 07cv4445 |
| Gladys Agudelo | 07cv4446 |
| Enrique Ali | 07cv1554 |
| Raul Allivar | 05cv9821 |
| Maria E. Alvarez and Carlos Chavarriage | 05cv10135 |
| Jose Alvarracin | 07cv1556 |
| Ivan Ascencio | 07cv1460 |
| Marcelo Atiencia | 07cv1562 |
| Peter B Bailon | 07cv5336 |
| Jose Barahona and Domenica Barahona | 07cv5550 |
| Hector Betancourt | 07cv4453 |
| Leopoldo Burgos | 07cv1473 |
| Manuel Caguana and Antonia Caguana | 06cv11968 |
| Ivan Calero and Reyna Calero | 07cv1575 |
| Wilson Calle | 07cv1578 |
| Rey R. Campoverde | 07cv5280 |
| Rodrigo Campozano | 07cv4459 |
| Edison Cardenas | 07cv1580 |
| Silvia Castillo and Segundo Castillo | 05cv1718 |
| Nancy Chuva | 07cv1589 |
| Yolanda Cintron | 06cv5631 |
| Jorge E Cortez | 07cv5394 |
| Lidia Cortijo | 07cv317 |
| Nancy Criollo and Lawrence Zenteino | 07cv4462 |
| Clara Dota | 07cv1602 |
| Jesse Drake and Susan Drake | 07cv5353 |
| Stanislaw Drozdz and Monika Drozdz | 06cv14620 |
| Inerva Duarte | 07cv1603 |
| Elvia Dutan and Wilfredo Dutan | 07cvl606 |
| Jorge Encalada | 07cvl607 |
| Luis Franco | 07cv4466 |
| Janina Frelas | 07cv1612 |
| Norberto Gallardo | 07cv5290 |
| Viviana Garcia | 07cv1617 |
| Peter Gaspar | 05cv10739 |
| Leonard Gawin and Miroslawa Gawin | 07cv1619 |
| Samuel T. Giamo and Rosemary Giamo | 06cv11676 |
| Hitien E Giraldo | 07cv5554 |
| Rosa Gualpa | 07cv4472 |
| Armando Guzman | 07cv5556 |
| Avenia Hernando and Nidia Hernando | 07cv4473 |
| Julio Hurtado and Elda Monica Hurtado | 07cv5295 |
| Manuel Idrovo | 07cv1628 |
| Edgar Idrovo | 07cv1627 |
| Jorge Inga | 07cv1629 |
| Jozef Jablonski and Agnieszka Jablonska | 07cv1630 |
| Jonas Jaramillo and Blanca Romelo | 06cv14746 |

| Plaintiff | Case Number |
|---|---|
| Marian Karus and Barbara Karus | 07cv1635 |
| Edward Kosowski | 07cv5299 |
| Ana Lascano | 05cv9333 |
| Andrzej Lasica and Ewelina Lasica | 07cv4480 |
| Carlos Lenis and Lucia Lenis | 06cv10045 |
| Ines Leon and Luis E. Quezada | 07cv4481 |
| Cesar Leon and Agnes Dipini | 07cv63 |
| Wilmo Loja | 07cv4482 |
| Fernando Lucero | 07cv5366 |
| Rosa Medina | 07cv4491 |
| Maria E. Melendez | 07cv5397 |
| Juan Mendez and Kareen Mendez | 07cv1664 |
| Carlos Merchan and Martha Merchan | 07cv1665 |
| Eugenic Mora and Olga Mora | 06cv13168 |
| Tatiana Morales and James Fink | 07cv5370 |
| Sandra Moreno | 07cv1670 |
| Luis Naranjo and Rosa Naranjo | 05cv10738 |
| Walter Naranjo and Miriam Naranjo | 07cv4496 |
| Oscar Negrete | 07cv5371 |
| Sean O'Connell and Carole O'Connell | 07cv5374 |
| Rosa Palaguachi and Rigoberto | 07cvl680 |
| David Reynolds and Katherine Reynolds | 07cv3446 |
| Marcel Rhoden and Deirdre L. Worley | 07cv5311 |
| Maximo Riera and Fanny Riera | 07cvl519 |
| Patricio Rodas and Taina Ruiz | 07cv1694 |
| Jaime Rojas and Johanna Hernandez | 07cv451I |
| Mieczyslaw Romaniuk | 07cv5316 |
| Victor Salazar | 07cv4512 |
| Rosa Sanchez and Hector Albarracih | 06cv12488 |
| Edilberto Sanchez | 07cv5384 |
| Emanuel Santamaria | 07cv1528 |
| Gala Sarmiento | 07cv1529 |
| Edwin Sarmiento and Nora Sarmiento | 07cv4515 |
| Teresa Serrano | 05cv8937 |
| Raul Siguencia | 07cv1533 |
| Felipe Suarez | 07cv1707 |
| Samuel Sumba and Mercedes Sumba | 07cv1710 |
| Pedro Tamayo and Gabriella Tamayo | 07cv1538 |
| Nicholas Teham | 07cv5564 |
| Julia Tenezaca | 07cv1714 |
| Cesareo Teran | 07cv5389 |
| Jeanne Thorpe | 07cv1715 |
| Carlos A. Valencia and Gloria N. Bonilla | 07cv5324 |
| Rommel Vasquez and Rosa A. Gomez | 07cvl543 |
| Kattia Vazquez and Peter Vazquez | 07cvl722 |
| Severo Vega and Lila Gonzalez | 07cv4521 |
| Segundo Villarroel and Martha L. Villarroel | 07cv1546 |
| Kleber Villarruel | 06cvl3703 |
| Kevin Walsh | 06cv12608 |
| Robert Waniurski and Ewa Waniurski | 07cv4524 |
| Ancil Watson | 07cv5391 |
| Clarence Wragg and Cecilia Wragg | 06cv8125 |